**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEOFFREY M. YOUNG,<br><br>                         Plaintiff,<br><br>        v.<br><br>STONEX GROUP INC., *et al*.,<br><br>                         Defendants. | Civil Action No. 24-00526 (GC) (JTQ)<br><br>**OPINION** |

**CASTNER, District Judge**

  **THIS MATTER** comes before the Court upon Defendants StoneX Group Inc. and GAIN Capital Group, LLC's Motion to Dismiss *pro se* Plaintiff Geoffrey M. Young's First Amended Complaint (FAC). (ECF No. 44.)  Plaintiff opposed, and Defendants replied. (ECF Nos. 48 & 50.)  The Court also considers Plaintiff's Motion for a Preliminary Injunction, (ECF No. 37), and Plaintiff's Amended Motion for Rule 11 Sanctions, (ECF No. 53).  Defendants opposed, (ECF Nos. 42 & 54), and Plaintiff replied, (ECF Nos. 45 & 55).  The Court has carefully reviewed the parties' submissions and decides the matter without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b).  For the reasons set forth below, and other good cause shown, Defendants' Motion to Dismiss is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction and Amended Motion for Rule 11 Sanctions are both **DENIED.**

I.     **BACKGROUND**[1]

    A.     **Factual Background**[2]

This case arises from allegations that Defendants fraudulently liquidated Plaintiff's foreign currency positions.  On January 14, 2021, Plaintiff opened an individual spot foreign currency trading account on the website FOREX.com (FOREX).  (ECF No. 35 ¶ 1.)  According to the FAC, FOREX is owned by Defendant GAIN Capital, which has offered trading services for retail investors since 2001.  (*Id*.)  GAIN Capital launched FOREX in 2004.  (*Id*.)  According to Plaintiff, StoneX Group[3] acquired GAIN Capital in 2020.  (*Id*.)

Plaintiff states that he aimed to invest most of his life savings in Mexican pesos and Russian rubles.  (*Id*. ¶ 3.)  At the time he opened the account, Plaintiff read and signed the customer agreement (the Agreement) prepared by Defendants.  (*Id*. ¶ 5.)  Based on his review of the Agreement, Plaintiff understood that he was required to maintain certain margin requirements. (*Id*.)  Specifically, Paragraph 9 of the Agreement provides that "[i]n the event of: (a) an Event of Default; (b) insufficient Margin . . . ; or (c) any other circumstances of developments that FOREX[ ], in its sole discretion, deems appropriate for its protection, FOREX[ ] may . . . take one or more . . . of the following actions: . . . (2) sell or purchase any or all Contracts and any securities or other property held or carried for Customer. . . . " (*Id*. ¶ 43.)  The Agreement also states that such actions "may be taken. . . without prior notice of sale . . . to Customer."  (*Id*.)  Plaintiff's understanding

---

[1]     The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

[2]     On a motion to dismiss under Rule 12(b)(6), the Court must accept all facts as true, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and quotations omitted).

[3]     StoneX Group is a publicly traded Delaware corporation with its principal place of business in New York.  (ECF No. 11.)

was that a failure to maintain the margin requirements authorized Defendants to close out his positions. (*Id*. at ¶ 5.) Therefore, Plaintiff contends that he "took great care never to let that happen." (*Id*.)

In early 2022, the conflict between Russia and Ukraine caused instability in the value of Russian rubles. (*See id*. ¶¶ 9-26.) On January 24, 2022, Russia's Central Bank temporarily suspended foreign currency purchases in response to the rapid devaluation. (*Id*. ¶ 9.) And, on February 26, 2022, the United States, Canada, and several European nations announced the expulsion of select Russian banks from the SWIFT financial messaging system, further destabilizing the market. (*Id*. ¶ 15.)

That same day, Plaintiff received an email from Defendants advising customers of increased market risk due to the "evolving Russia/Ukraine conflict." (*Id*. ¶ 13.) The email stated that "you are responsible for monitoring your account and maintaining 100% of the required margin at all times to support your open positions." (*Id*.) The email also advised that there were "several proactive measures" that could be taken to "help prevent liquidation and manage risk," including keeping "your account funded well in excess of your required margin." (*Id*.) Finally, the email stated that "[f]orex trading involves significant risk of loss and is not suitable for all investors" and reminded customers that "with greater volatility comes increased risk." (*Id*.)

Even as the value of the ruble declined, Plaintiff continued to purchase the currency through his FOREX account. (*See id*. ¶¶ 9-26.) Plaintiff states that throughout this period, he maintained the required margin in his account. (*Id*.) Despite the instability, Plaintiff viewed the situation as "the opportunity [he] had been waiting for" since opening his FOREX account. (*Id*. ¶ 16.) Plaintiff had long believed that Russia was "extremely well-managed and economically sound." (*Id*.) Furthermore, Plaintiff believed that the "US dollar was and is grossly overvalued,"

and that the investments in the ruble would pay off when the value of the dollar crashed, as Plaintiff believed it would.  (*Id*.)

However, on March 10, 2022, Plaintiff received an email from Defendants stating that due to "recent market volatility and global events, we will be closing all open positions in USD/RUB and EUR/RUB due to diminishing liquidity" after the close of market on March 11, 2022.  (*Id*. ¶ 27.)  Plaintiff was "shocked and extremely angry."  (*Id*.)  The following day, March 11, 2022, Plaintiff spoke by phone with Emanuel Shalom, an employee of FOREX.  (*Id*. ¶¶ 28-29.)  According to Plaintiff, Shalom informed him that the market for rubles was extremely illiquid and that, under the terms of the Agreement, Defendants had the right to close all open positions in rubles for the protection of itself and its customers.  (*Id*. ¶ 30.)  Plaintiff alleges that he informed Shalom that "I believe that what FOREX is about to do constitutes fraud.  FOREX is forcing me to sell all my Russian rubles at a huge loss, against my will, for no valid reason."  (*Id*. ¶ 29.)

According to Plaintiff, Shalom explained that "the subcontractors FOREX works with are finding it very difficult to obtain rubles at this time."  (*Id*. ¶ 30.)  Plaintiff asserts that this statement was "ridiculous, misleading, deceptive and false on its face."  (*Id*.)  In fact, Plaintiff contends, the declining price of rubles actually demonstrated an oversupply—and ready availability—of the currency in the global market.  (*See id.* ("when the price of [rubles] declines relative to the price of [U.S. dollars], it means there is an oversupply of [rubles] available in the international currency market . . . for purchase by FOREX.com.").)  Plaintiff further alleges that even if Defendants' subcontractors could not obtain rubles, this fact did not justify Defendants' decision to sell Plaintiff's rubles.  (*Id*. ¶ 31.)  Plaintiff also alleges that forcing customers to sell all their rubles "exerted some downward pressure on the price of rubles."  (*Id*.)

Plaintiff alleges that Shalom made additional "material misrepresentations" during the March 11, 2022 phone call. (*See id.* ¶ 51.) First, Shalom "repeatedly" told Plaintiff that, under the terms of the Agreement, Defendants had the right to close all open positions in rubles "**for the protection of its customers and FOREX**." (*Id.* (emphasis in original).) This sentiment was repeated in an email sent by Defendants later that day. (*Id.* ¶ 52.) Plaintiff contends that this is a misstatement, as it conflicts with Paragraph 9 of the Agreement stating that Defendants may close these positions in any circumstance in which "**FOREX.com, in its sole discretion, deems appropriate for its protection**." (*Id.* (emphasis in original).) In reality, Plaintiff asserts, "the contract says nothing about protecting the customer, only the company." (*Id.*)

Plaintiff also attempted to bargain with Shalom, offering to sign a contract in which he would promise not to sell rubles for a period of 12 months. (*Id.* ¶ 33.) Plaintiff believed this would "eliminate all risk to FOREX" because he "kn[e]w for certain that the value of the ruble [was] going to go back up." (*Id.*) Shalom refused Plaintiff's offer. (*Id.* ¶¶ 34-36.) Later that day, Plaintiff received another email from Defendants emphasizing that FOREX was not "attempting to benefit from these unfortunate circumstances" as the positions would be "closed at mid-point price." (*Id.* ¶ 38.) Plaintiff states that he "interpreted this second email as a clumsy attempt by the Defendants to cover their rear ends in case [he] decided to sue them for stealing half [his] life savings." (*Id.*) That evening, FOREX liquidated Plaintiff's open USD/RUB positions, which totaled 22,475,831 rubles. (*Id.* ¶ 39.)

Plaintiff alleges that the Agreement was "unconscionable, grossly unfair, and invalid" and that Defendants' actions based on that Agreement were fraudulent. (*Id.* ¶ 55.) Plaintiff seeks 22,475,831 in Russian rubles, $30,000 in punitive damages from each of the Defendants, and a "permanent injunction to compel the Defendants to amend the language in their currently [] invalid

and unconscionable customer agreement (contract) in such a way as to prevent them from ever robbing, defrauding and/or cheating [him] or any other investor or customer again in the same outrageous way."  (*Id.* ¶ 2; *see also* ECF No. 37.)

### B.    Procedural Background

Plaintiff filed his initial Complaint on January 29, 2024, alleging that Defendants' sale of Plaintiff's USD/RUB positions constituted common law fraud.[4]  (*See generally* ECF No. 1.) Defendants filed a Motion to Dismiss on April 12, 2024, arguing that Plaintiff's Complaint must be dismissed because (1) Defendants' exercise of rights provided to them by contract under the Customer Agreement entered into by Plaintiff when he registered his FOREX.com account does not constitute fraud; (2) Plaintiff does not allege that he was fraudulently induced into signing the Customer Agreement, and therefore his fraud claim is barred by the economic loss doctrine; and (3) Plaintiff does not sufficiently allege fraud under the heightened pleading standard of Rule 9(b). (*See* ECF No. 17-3 at 19-26.[5])  The Court dismissed Plaintiff's Complaint, finding that Plaintiff did not state a claim for fraud because he failed to plausibly allege any misrepresentation or omission by Defendants.  (ECF No. 33 at 11.)

On January 27, 2025, Plaintiff filed the FAC, which reasserts his claim for common law fraud.[6]  (ECF Nos. 35, 36, 43.)  The same day, Plaintiff filed a Motion for a Preliminary Injunction

---

[4]    As noted in the Court's prior Motion to Dismiss Opinion, Plaintiff's initial Complaint did not clearly set forth a cause of action, but the Court understood Plaintiff to be asserting a claim for common law fraud.  (*See* ECF No. 33 at 7.)

[5]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

[6]    Once again, Plaintiff does not clearly set forth a cause of action in his FAC.  Based on the allegations, the Court understands Plaintiff to be asserting a claim for common law fraud.  (*See* ECF No. 33 at 7 (construing Plaintiff to be asserting a claim for common law fraud); ECF No. 35 ¶¶ 2 ("I am suing the Defendants for conspiring to . . . defraud me"); 55 ("Defendants' Customer Agreement has always been an . . . invalid contract which they used . . . to defraud me."); ECF No.

requesting that the Court order Defendants to amend their customer agreements in a way that affords more protection to Plaintiff and other customers. (ECF No. 37.) Defendants opposed the Motion for Preliminary Injunction, and Plaintiff replied. (ECF Nos. 40, 45.) On March 17, 2025, Defendants filed a Motion to Dismiss the FAC. (ECF No. 44.)

Rather than filing an Opposition to the Motion to Dismiss the FAC, on April 8, 2025, Plaintiff filed a "Motion to Sanction Defendants and Their Attorneys for Severe, Chronic Violations of FRCP 11." (ECF No. 48.) Because Plaintiff subsequently filed an Amended Motion for Sanctions on May 27, 2025, (ECF No. 53), and in light of Plaintiff's *pro se* status, the Court will consider the arguments raised in Plaintiff's Rule 11 Motion (ECF No. 48) as an Opposition to Defendants' Motion to Dismiss the FAC. *See Sloan v. Hainsworth*, Civ. No. 14-249, 2016 WL 551690, at *2 (W.D. Pa. Jan. 21, 2016), *report and recommendation adopted*, Civ. No. 14-249, 2016 WL 590479 (W.D. Pa. Feb. 11, 2016) ("This [c]ourt will liberally construe the points raised in [the *pro se* p]laintiff's motion for sanctions as his opposition to the motion to dismiss."). Defendants replied to the arguments raised in Plaintiff's Opposition, (ECF No. 50), and separately opposed Plaintiff's Amended Motion for Sanctions, (ECF No. 54).

## II.   <u>LEGAL STANDARD</u>

### A.   **Motion to Dismiss**

On a motion to dismiss for failure to state a claim, courts "accept the factual allegations in the complaint as true, draw all reasonable inferences in favor of the plaintiff, and assess whether the complaint and the exhibits attached to it 'contain enough facts to state a claim to relief that is plausible on its face.'" *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023) (quoting

---

48 at 9-10 (arguing "because I squarely challenged the validity of the customer agreement in my [FAC], none of my allegations of fraud may be ignored by this Court" and "the so-called 'economic-loss doctrine' cannot and does not bar my fraud claim.").)

*Watters v. Bd. of Sch. Dir. of City of Scranton*, 975 F.3d 406, 412 (3d Cir. 2020)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022) (quoting *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372 (3d Cir. 2019)). When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson*, 57 F.4th at 140 (citing *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 903 (3d Cir. 2021)). The defendant bringing a Rule 12(b)(6) motion bears the burden of "showing that a complaint fails to state a claim." *In re Plavix Mktg., Sales Pracs. & Prod. Liab. Litig. (No. II)*, 974 F.3d 228, 231 (3d Cir. 2020) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016)).

For claims of fraud, plaintiffs "must satisfy the heightened pleading standards of Federal Rule of Civil Procedure 9(b)." *Burns v. Stratos*, 2023 WL 4014474, at *2 n.3 (3d Cir. June 15, 2023) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This ordinarily requires "[a] plaintiff alleging fraud . . . [to] support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Properties, Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)). "Rule 9(b)'s 'normally rigorous particularity rule has been relaxed somewhat where the factual information is particularly within the defendant's knowledge or control.' But even if a relaxed application of Rule 9(b) were warranted . . ., [a plaintiff] would still need to allege facts demonstrating that his [or her] fraud claims are plausible."

*Tripati v. Wexford Health Sources Inc.*, 2022 WL 17690156, at *2 n.3 (3d Cir. Dec. 15, 2022)

(quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997)).

Plaintiff is proceeding *pro se* and "[t]he obligation to liberally construe a pro se litigant's pleadings is well-established." *Higgs v. Att'y Gen. of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). "Courts are to construe complaints so as to do substantial justice, keeping in mind that *pro se* complaints in particular should be construed liberally." *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) (citing Fed. R. Civ. P. 8(f)). "Liberal construction does not, however, require the Court to credit a *pro se* plaintiff's 'bald assertions' or 'legal conclusions.'" *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 282 (D.N.J. 2013) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)). "[P]ro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). And, "[p]ro se plaintiffs are also not exempt from meeting the heightened pleading requirements of Rule 9(b) when alleging claims that sound in fraud." *Kaul v. Christie*, 372 F. Supp. 3d 206, 229 (D.N.J. 2019). Even a *pro se* complaint may be dismissed for failure to state a claim if the allegations set forth by the plaintiff cannot be construed as supplying facts to support a claim entitling the plaintiff to relief." *Grohs*, 984 F. Supp. 2d at 282 (citing *Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981)).

### B. Preliminary Injunction

Preliminary injunctive relief "is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (internal quotation marks and citation omitted). A primary purpose of a preliminary injunction is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994).

A plaintiff seeking a preliminary injunction must establish that (1) they are reasonably likely to succeed on the merits, (2) they are likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3rd Cir. 2017); *see also HR Staffing Consultants, LLC v. Butts*, Civ. No. 15-3155, 2015 WL 3492609, at *7 (D.N.J. June 2, 2015) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).  If a plaintiff meets the first two factors, the court "then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179.  "Because a 'preliminary injunction is an extraordinary and drastic remedy,' the movant bears the burden of making 'a clear showing.'"  *Del. State Sportsmen's Ass'n, Inc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194, 202 (3d Cir. 2024) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)) (emphasis in original).

## III.    DISCUSSION

### A.    Motion to Dismiss

To make out a claim for common law fraud under New Jersey law, a plaintiff must allege: (1) a material misrepresentation or omission of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance; and (5) damages.  *Stockroom, Inc. v. Dydacomp Dev. Corp.*, 941 F. Supp. 2d 537, 546 (D.N.J. 2013) (citing *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).[7]

The FAC attempts to cure the deficiencies of the previous Complaint by adding allegations of misrepresentation—namely, statements Shalom made during his March 11, 2022, phone call

---

[7]    There does not appear to be a dispute that New Jersey law applies to Plaintiff's common law fraud claim.  (*See* ECF No. 44-2 at 14; *see generally* ECF No. 35 (citing New Jersey law).)

with Plaintiff. (*See generally* ECF No. 35.) Plaintiff alleges that Shalom repeatedly told Plaintiff "that for the protection of its customers and FOREX, the company has the right to close all open positions in [rubles]." (ECF No. 35 ¶¶ 30, 32, 34, 51.) However, Plaintiff contends, the Agreement—specifically Paragraph 9— "says nothing about protecting the customer, only the company" and therefore Shalom was "deceiving [him] about the content of the [ ] Agreement." (*Id*. ¶ 52.) Plaintiff also alleges that one of Shalom's justifications for Defendants' actions—that rubles were difficult to obtain—was false. (*Id*. ¶ 30.) And, even if the statement was true, Plaintiff contends it did not justify Defendants' liquidation of Plaintiff's rubles.[8] (*Id*.)

Despite these new allegations, Plaintiff still has not plausibly alleged facts that would permit this Court to infer that these alleged statements made by Defendants were false. Nor has Plaintiff alleged that Defendants promised Plaintiff that they would not liquidate his rubles despite the volatile market. To the contrary, the Agreement expressly provides Defendants with the authority to liquidate Plaintiff's account for any reason that "FOREX.com, in its sole discretion, deems appropriate for its protection . . . without prior notice . . . to Customer." (ECF No. 35 ¶ 43 (quoting Paragraph 9 of the Agreement).) Even if the Court were to construe Plaintiff's allegations as constituting a misrepresentation regarding the contents of the Agreement, "[u]nambiguous

---

[8]    Additionally, Plaintiff alleges that Shalom did not inform Plaintiff about "Paragraph 8" of the Agreement, which states that "[i]n cases where transactions are executed for physical delivery . . . Delivery of Foreign Currency shall be made to the bank specified by the purchaser in a major city in the country in which the Foreign Currency is the legal tender." (ECF No. 35 ¶¶ 49-51.) Shalom's omission, Plaintiff contends, is a "material misrepresentation," as Plaintiff missed out on the opportunity to have Defendants "obtain 22,475,831 rubles in cash and ship them to [him]." (*Id*. ¶¶ 50-51.) Even if Plaintiff's interpretation of Paragraph 8 is correct, "[u]nder New Jersey law, a defendant has no obligation to alert a plaintiff to [any provision] that is contained within the contract that the plaintiff is signing[.]" *Bacon v. Avis Budget Grp., Inc*., 357 F. Supp. 3d 401, 422-23 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020). The Court is not aware of any precedent establishing that a defendant's failure to highlight a contractual provision—particularly one available for Plaintiff's review and authorized by Plaintiff—satisfies the misrepresentation element of a common law fraud claim, and Plaintiff cites no authority suggesting otherwise.

written provisions control over oral statements to the contrary." *Camelart Ltd. v. StoneX Group Inc.*, Civ. No. 20-7707, 2021 WL 4864145, at *4 (N.D. Ill. Oct. 19, 2021) (involving claims against StoneX Group and holding that the plaintiff failed to state a fraud claim under the Commodity Exchange Act when StoneX Group liquidated the plaintiff's assets for failure to maintain adequate margins pursuant to a customer agreement). Moreover, Defendants were under no obligation to advise Plaintiff of their right to liquidate Plaintiff's rubles. *See Bacon v. Avis Budget Grp., Inc.*, 357 F. Supp. 3d 401, 422-23 (D.N.J. 2018), *aff'd*, 959 F.3d 590 (3d Cir. 2020) ("Under New Jersey law . . . a defendant has no obligation to alert a plaintiff to [any provision] that is contained within the contract that the plaintiff is signing: 'Failing to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading.'" (quoting *Gras v. Assoc's First Capital Corp.*, 786 A.2d 886 (N.J. Super. Ct. App. Div. 2001)).

Further, allegations that Plaintiff knew Shalom's statements were false eliminates any possibility of reasonable reliance. A party cannot reasonably rely on a representation when that "party knows [the] representation is untrue." *Jatras v. Bank of Am. Corp.*, Civ. No. 09-3107, 2010 WL 5418912, at *5 (D.N.J. Dec. 23, 2010) (citing *Int'l Minerals and Min. Corp. v. Citicorp N. Am.,* 736 F. Supp. 587, 598 (D.N.J.1990)). Plaintiff's own allegations establish his disbelief in Defendants' misrepresentations. When Shalom stated that "the subcontractors [Defendants] work[ ] with are finding it very difficult to obtain rubles at this time," Plaintiff alleges that such a statement was "ridiculous, misleading, deceptive, and false on its face." (ECF No. 35 ¶ 30.) Similarly, despite Shalom's repeated assurances that Defendants had a right to close all open positions in USD/RUB "for the protection of its customers and [Defendants]," Plaintiff directly challenged this claim, telling Shalom that "forcing [him] to close [his] ruble positions might protect [Defendants], but it would not protect [Plaintiff] at all." (*Id.* ¶ 51.) And, when Plaintiff received

the February 26, 2022 email from Defendants warning of the risks with the current market, Plaintiff alleges that the "email did not alarm [him] at all." (*Id.* ¶ 14.)

Plaintiff also fails to allege that Defendants knew their statements were false or that Defendants intended for Plaintiff to rely on them. *See Kuhn v. Willford*, Civ. No. 24-1123, 2025 WL 1793365, at *6 (D.N.J. June 30, 2025) (dismissing claim for common law fraud when the complaint failed to allege that the defendant made misstatements "with the intent that [the p]laintiff would rely on them"). The FAC contains no allegations that Defendants' statements were intended to induce Plaintiff to take any action. *See Trusted Transportation Sols., LLC v. Guarantee Ins. Co*., Civ. No. 16-7094, 2018 WL 2926167, at *6 (D.N.J. June 11, 2018) (dismissing claim for fraud because "[The p]laintiff does not allege how, if at all, any of the alleged misrepresentations or omissions were intended to induce [the p]laintiff to act"). To the contrary, the FAC alleges that Defendants advised Plaintiff of the heightened risks because of the Russia/Ukraine conflict and "to bear this in mind when trading during this period." (ECF No. 35 ¶ 13.) Defendants liquidated Plaintiff's positions irrespective of any action Plaintiff took in response. (*See generally* ECF No. 35 ¶¶ 23-27, 52-55.) The FAC thus fails to adequately plead intent to induce reliance, a necessary element of common law fraud. *See Morisseau v. Borough of N. Arlington*, Civ. No. 16-837, 2018 WL 1522731, at *18 (D.N.J. Mar. 28, 2018) (stating that the plaintiff must allege that the misstatements were "made with the intent that [the p]laintiff rely on [them]"); *see also Neuss v. Rubi Rose, LLC*, Civ. No. 16-2339, 2017 WL 2367056, at *9 (D.N.J. May 31, 2017) ("[The p]laintiffs fail to allege any facts in support of [the d]efendants' knowledge or belief of their falsity, or that [the d]efendants intended [the p]laintiffs to rely on that falsity. Consequently, [the p]laintiffs fail to properly plead a claim for common law fraud under New [J]ersey law.").

Furthermore, while Plaintiff alleges that he suffered damages, he fails to allege that his damages stem from his reliance on Defendants' statements.  (*See* ECF No. 35 ¶ 25.)  Rather, Plaintiff's losses stem from Defendants' unilateral decision to liquidate Plaintiff's rubles. However, Defendants were entitled to take such action based on the express terms of the Agreement.  (*See id*. ¶ 47 (Paragraph 9 of the Agreement, granting Defendants the right to sell or purchase any or all contracts and securities held by its customers for reasons "in its sole discretion, [it] deems appropriate for its protection").)  And, Plaintiff admits to reviewing and signing the Agreement on January 14, 2021—more than a year before the alleged misrepresentations occurred. (*See id*. ¶ 5[9]; *see also Danganan v. Guardian Prot. Servs*., 813 F. App'x 769, 773 (3d Cir. 2020) (holding that the plaintiff "does not allege justifiable reliance on deceptive conduct because the [a]greement's terms are clear. . . .  [The plaintiff] has not pleaded that he relied on any conduct by [the defendant] other than the terms of the [a]greement itself, which stated that '[the plaintiff's] obligations . . . continue even if [the plaintiff] sell[s] or leave[s] the [p]remises.").

Plaintiff also appears to assert that Defendants' actions were fraudulent because they were based on the Agreement that, Plaintiff contends, was invalid under the doctrine of unconscionability.[10]  (*See* ECF No. 35 ¶ 55 ("In conclusion, [ ] Defendants' [ ] Agreement has

---

[9]     In his reply brief, Plaintiff states that "[i]n reality, [he only] skimmed the Customer Agreement" and "glanced at [Paragraph] 9," and that based on this cursory reading he "got no inkling that Defendants would ever liquidate any of my open positions if I kept the margin in my account high enough."  (ECF No. 48 at 19.)  Plaintiff's "fail[ure] to read a contract does not excuse performance unless fraud or misconduct by the other party prevented one from reading."  *Gras v. Assoc's First Capital Corp.*, 786 A.2d 886 (N.J. Super. Ct. App. Div. 2001) (internal quotation and citation omitted).  Plaintiff does not allege that he was fraudulently induced into signing the Agreement.

[10]     It is unclear whether Plaintiff is also attempting to use the doctrine of unconscionability to assert a separate cause of action.  To the extent he is, the Court notes that, under New Jersey law, the doctrine of unconscionability generally "acts as a shield against enforcement of an unreasonable contract and not a sword on a claim for affirmative relief."  *Hunter v. Sterling Bank, Inc.*, Civ. No. 09-0172, 2011 WL 5921388, at *8 (D.N.J. Nov. 28, 2011).  Therefore,

always been an unconscionable, grossly unfair, invalid contract which they used on March 11, 2022 to defraud me of approximately half my life savings."); ECF No. 48 at 6.[11])  However, Plaintiff does not assert that Defendants fraudulently induced him into signing the Agreement.  As a result, the validity of the Agreement is not relevant to Plaintiff's fraud claim and does not cure Plaintiff's failure to plead the essential elements of fraud.

Therefore, Plaintiff's Complaint is dismissed without prejudice for failure to state a claim. The Court will give Plaintiff one final opportunity to amend his Complaint to the extent that he can cure the deficiencies set forth in this Opinion.

### B.    Motion for Sanctions

Plaintiff moves for sanctions under Rule 11, alleging that on multiple occasions, Defendants have lied to the Court about the "facts or the law."  (ECF No. 53 at 1.)  Rule 11 allows a party to move for the imposition of sanctions against an adversary.  *See* Fed. R. Civ. P. 11(c)(2). Sanctions awarded under Rule 11 "are warranted only in the exceptional circumstances where a claim or motion is patently unmeritorious or frivolous" and amounts to an abuse of the legal

---

unconscionability cannot be used to bring an affirmative standalone cause of action.  *See Khorchid v. 7-Eleven, Inc.*, Civ. No. 18-8525, 2019 WL 3812472, at *7 (D.N.J. Aug. 14, 2019).

[11]    Plaintiff's arguments pertaining to unconscionability also appear to be an attempt to preemptively counter Defendants' argument that the economic loss doctrine bars Plaintiff's claim for common law fraud.  Under this doctrine, a plaintiff is "prohibit[ed] . . . from recovering in tort economic losses to which their entitlement only flows from a contract."  *State Cap. Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009).  While courts have held that the economic loss doctrine does not bar a fraud claim pled in the alternative to a breach of contract claim, *see Shapiro v. Barnea*, Civ. No. 6-811, 2006 WL 3780647, at *4 (D.N.J. Dec. 21, 2006), Plaintiff would still need to successfully plead a fraud claim, which he has failed to do.  *See Ribble Co., Inc. v. Burkert Fluid Control Sys.*, Civ. No. 15-6173, 2016 WL 6886869, at *4 (D.N.J. Nov. 22, 2016) (stating that "even if it was not barred by the economic loss doctrine, [the p]laintiff's fraud claim fails because the [a]mended [c]omplaint is devoid of any facts indicating that [the p]laintiff reasonably relied on any alleged misrepresentations or suffered any resulting damages").

system. *Watson v. City of Salem*, 934 F. Supp. 643, 662 (D.N.J. 1995); *Doering v. Union Cnty. Bd. of Chosen Freeholders*, 857 F.2d 191, 194 (3d Cir. 1988).

The Court will deny Plaintiff's Motion as it fails to identify any sanctionable conduct and instead merely reiterates Plaintiff's disagreement with Defendants' legal arguments. (*See, e.g.,* ECF No. 53 at 3 (asserting that Defendants are incorrect in their assertion that Plaintiff failed to properly plead material misrepresentation, as required to state a claim for common law fraud, and characterizing Defendants' arguments as a "major, material LIE[ ]" warranting "massive punitive sanctions").) Plaintiff has not pointed to any "patently unmeritorious or frivolous" filings or arguments made by Defendants. *Watson*, 934 F. Supp. at 662. Disagreement with opposing counsel's legal arguments, however vigorous, does not constitute sanctionable conduct under Rule 11. *See Smit v. Twp. of Toms River NJ*, Civ. No. 22-02594, 2025 WL 26671, at *4 (D.N.J. Jan. 3, 2025) ("Here, [the plaintiff's] arguments amount to his disagreement with [the defendant's] positions and do not identify any frivolous legal filings, much less a filing where the evident frivolousness of a claim or motion amounts to an abuse of the legal system.") (internal quotations and citations omitted); *Camacho v. Dean*, Civ. No. 14-01428, 2015 WL 4478755, at *8 (M.D. Pa. July 22, 2015) ("In sum, while [the plaintiff] disagrees with many of the assertions and arguments presented by the defendants, the defendants have not abused the litigation system, and sanctions are not warranted.").

## C.    Preliminary Injunction

Having granted Defendants' Motion to Dismiss, the Court also denies Plaintiff's Motion for a Preliminary Injunction as moot. *See Save Long Beach Island v. U.S. Dep't of Com.*, 721 F. Supp. 3d 317, 324 n.3 (D.N.J. 2024) ("Since the Court grants Defendants' Motions to Dismiss, the Court denies Plaintiffs' Motion for a Preliminary Injunction . . . as moot."); *Pascarella v. Swift Transp. Co.*, 643 F. Supp. 2d 639, 646 n.7 (D.N.J. 2009) ("The Court, having granted [the

defendant's] motion to dismiss, will therefore dismiss [the p]laintiff's motion for a preliminary injunction as moot.").

IV.    **CONCLUSION**

For the foregoing reasons, and other good cause shown, Defendant's Motion to Dismiss (ECF No. 44) is **GRANTED** and Plaintiff's Motion for a Preliminary Injunction (ECF No. 37) and Amended Motion for Rule 11 Sanctions (ECF No. 53) are both **DENIED**.  An appropriate Order follows.

Dated: August 5, 2025

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE